IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GABRIEL ATENCIO,

    Plaintiff,

v.                                                      Civ. No. 21-594 KK

KILOLO KIJAKAZI,[1]
Acting Commissioner of the
Social Security Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER[2]

THIS MATTER is before the Court on Plaintiff Gabriel Atencio's Opposed Motion to Reverse and/or Remand (the "Motion") (Doc. 19), filed February 1, 2022, challenging the determination of the Acting Commissioner of the Social Security Administration ("the Commissioner") that Plaintiff is not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-34. On April 26, 2022, the Commissioner filed a response, and on May 24, 2022, Mr. Atencio filed a reply. (Docs. 23, 28.) Having meticulously reviewed the entire record and the relevant law, and being otherwise sufficiently advised, the Court concludes that the ALJ's inadequate evaluation of Mr. Atencio's gastrointestinal disorders warrants remand to the Commissioner for further proceedings.

---

[1] Kilolo Kijakazi was appointed Acting Commissioner of the Social Security Administration on July 9, 2021.

[2] Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have consented to the undersigned to conduct dispositive proceedings and order the entry of final judgment in this case. (Doc. 27.)

## I. BACKGROUND AND PROCEDURAL HISTORY

Mr. Atencio is a Gulf War veteran who receives Veterans Affairs ("VA") benefits after being found "to be totally and permanently disabled" due to "service-connected disabilities" rendering him "unemployable." (AR[3] 291, 292, 462, 512, 530.) Mr. Atencio was employed as an electrician for approximately 17 years before he claims he became disabled. (AR 320.)

On November 12, 2019, at 50 years old, Mr. Atencio applied for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*. alleging a disability onset date of April 25, 2017. (AR 11, 13.) In his application, Mr. Atencio alleged disability due to post-traumatic stress disorder ("PTSD"), irritable bowel syndrome ("IBS"), high blood pressure, sleep apnea, tinnitus, erectile dysfunction, tremors, severe headaches, allergies, and dizziness.[4] (AR 11, 201-202, 294, 319, 495.) Mr. Atencio's application was denied on February 10, 2020 (AR 11), and upon reconsideration on April 17, 2020. (*Id*.) Mr. Atencio requested a hearing, which Administrative Law Judge ("ALJ") Michael Leppala conducted telephonically on January 7, 2021. (*Id*.; AR 135–168.) Mr. Atencio was represented by counsel and testified at the hearing, as did vocational expert Nicole King. (AR 137.)

On February 1, 2021, the ALJ issued his decision finding that Mr. Atencio was not disabled under the relevant sections of the Social Security Act. (AR 11–23.) Mr. Atencio requested that the Appeals Council review the ALJ's decision (AR 6-7), and on June 3, 2021, the Appeals Council

---

[3] Citations to "AR" are to the Certified Transcript of the Administrative Record filed in this matter on September 7, 2021. (Doc. 10.)

[4] Mr. Atencio first applied for Social Security Disability Insurance Benefits in December 2014. (AR 172.) That claim was denied initially on April 2, 2015, and upon reconsideration on August 4, 2015. (*Id*.) After a hearing, an administrative law judge denied his claim in a written decision on March 20, 2017. (AR 172–88.) In the decision, the ALJ found, inter alia, that Mr. Atencio's "chronic diarrhea" was a non-severe medically determinable impairment. (AR 174.) The Appeals Council declined to review the ALJ's decision. (AR 194.)

denied his request for review (AR 1–4), which made the ALJ's decision the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). Mr. Atencio filed the instant appeal on June 29, 2021, seeking review of the Commissioner's decision. (Doc. 1.)

## II.  LEGAL STANDARDS

### A.  Standard of Review

The Court's review of the Commissioner's final decision is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards to evaluate the evidence. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). In making these determinations, the Court must meticulously examine the entire record but may neither reweigh the evidence nor substitute its judgment for that of the agency. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). In other words, the Court does not reexamine the issues *de novo*. *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993).

The Court will not disturb the Commissioner's final decision if it correctly applies legal standards and is based on substantial evidence in the record. *Hamlin*, 365 F.3d at 1214. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation omitted). It is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118 (quotation omitted) or "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) (citation omitted). The Court's examination of the record as a whole must include "anything that

may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citation omitted).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotation marks, brackets, and citation omitted omitted). Although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," and "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) (citations omitted). If the ALJ fails to do so, "the case must be remanded for the ALJ to set out his specific findings and his reasons for accepting or rejecting evidence[.]" *Id.* at 1010.

### B. Disability Framework

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration ("SSA") has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Wall v. Astrue*, 561 F.3d 1048, 1051-52 (10th Cir. 2009); 20 C.F.R. § 404.1520. If a finding of disability or non-disability is directed at any point, the SSA will not proceed through the remaining steps. *See Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity and the severity of his impairment or combination of impairments. *See id.* at 24-25. If no finding is directed after the third

step, the Commissioner must determine the claimant's residual functional capacity ("RFC"), or the most that he is able to do despite his limitations. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a). At step four, the claimant must prove that, based on his RFC, he is unable to perform the work he has done in the past. *See Thomas*, 540 U.S. at 25. If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" the claimant retains sufficient RFC "to perform work in the national economy, given his age, education and work experience." *Grogan*, 399 F.3d at 1261 (citation omitted); *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

### III. THE ALJ'S DETERMINATION

ALJ Leppala reviewed Mr. Atencio's DIB claim pursuant to the five-step sequential evaluation process. (AR 11–23.) First, he found that Mr. Atencio met the insured status requirements through December 31, 2019 and had not engaged in substantial gainful activity since April 25, 2017, his alleged disability onset date. (AR 13.) The ALJ found at step two that Mr. Atencio suffered from severe, medically determinable impairments of right shoulder dysfunction, obesity, depression, anxiety, PTSD, and alcohol use disorder. (*Id*.) At step three, the ALJ concluded that Mr. Atencio did not have an impairment or combination of impairments that met or medically equaled the criteria of listed impairments under Appendix 1 of the SSA's regulations. (AR 14–17.)

Moving to the next step, the ALJ found that Mr. Atencio has the residual functional capacity ("RFC") to

perform light work[5] as defined in 20 C.F.R. 404.1567(b) except [Mr. Atencio] is capable of occasionally lifting and/or carrying twenty pounds, frequently lifting and/or carrying ten pounds, standing and/or walking for about six hours in an eight-hour workday, and sitting for about six hours in an eight-hour workday, all with normal breaks. He is further limited to frequently climbing ramps, stairs, ladders, ropes, or scaffolds, stooping, kneeling, crouching, crawling, and balancing. [Mr. Atencio] can understand, carry out, and remember simple instructions and make commensurate work-related decisions, respond appropriately to supervision, coworkers, and work situations, deal with routine changes in work setting, maintain concentration persistence[] and pace for up to and including two hours at a time with normal breaks throughout a normal workday. [Mr. Atencio] is limited to simple, routine, and repetitive tasks and incidental work-related interactions with coworkers, supervisors, and the general public. He is best suited to a workplace with limited interpersonal interaction.

(AR 17.) Based on this RFC, the ALJ found that Mr. Atencio was not capable of performing his past relevant work as an electrician. (AR 21.)

The ALJ proceeded to step five of the analysis and found that, based on his age, education, work experience, and RFC, Mr. Atencio was "capable of making a successful adjustment to other work that existed in significant numbers in the national economy," such as garment sorter (DOT 222.687-014) and housekeeping cleaner (DOT 323.687-014). (AR 22.) The ALJ therefore concluded that Mr. Atencio was "not under a disability, as defined in the Social Security Act, at any time from April 25, 2017, the alleged onset date, through December 31, 2019, the date last insured." (*Id.*)

---

[5] "Light work" involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 CFR 404.1567(b). "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id*. A person "considered capable of performing a full or wide range of light work . . . must have the ability to do substantially all of these activities." *Id*.

## IV. DISCUSSION

Among other claimed errors[6], Mr. Atencio takes issue with the ALJ's "woefully inadequate" discussion of his gastrointestinal ("GI") issues and failure to assess whether his gastric problems are medically determinable and severe and to consider his GI symptoms in formulating the RFC. (Doc. 19 at 20-21.) The Commissioner counters that the ALJ reasonably considered the limited evidence of Mr. Atencio's gastric conditions. (Doc. 23 at 8.) The Court finds that the ALJ harmfully failed to properly consider, evaluate, and discuss Mr. Atencio's GI disorders and symptoms. As such, the case must be remanded for a proper consideration and "for the ALJ to set out his specific findings and his reasons for accepting or rejecting evidence[.]" *Clifton,* 79 F.3d at 1010.

The record reflects that for many years Mr. Atencio has suffered from symptoms of GI disorders including bloating, abdominal cramping, distension, and chronic diarrhea.[7] (AR 150; 172, 174-75, 206, 221, 376, 434-37, 466–69, 551-56, 596-97, 600-601, 640-41, 650-53). Sometime before March 20, 2017, the VA assessed Mr. Atencio with a 30% service-connected disability for "chronic diarrhea" with VA records reflecting he suffered symptoms including diarrhea, weight loss, unexplained appetite, abdominal distress, disturbances of bowel function and frequent episodes of bowel disturbances. (AR 174-75, 184, 188.) Mr. Atencio's GI symptoms eventually

---

[6] Mr. Atencio also contends that the ALJ erred by failing to incorporate moderate limitations in adapting appropriately to changes in work setting and to determine whether his sleep apnea is medically determinable, severe, or imposes vocationally relevant limitations. (Doc. 19 at 18–20, 22-24.) The Commissioner also disputes these arguments. (*See generally* Doc. 23.) The Court does not address these claims of error because they may be affected on remand. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

[7] Mr. Atencio's first unsuccessful claim for Social Security Disability Insurance Benefits filed in December 2014, (AR 172), resulted in a finding by the Commissioner that Mr. Atencio had a non-severe medically determinable impairment of "chronic diarrhea." (AR 174.)

7

led to a definitive diagnosis of Small Intestinal Bacterial Overgrowth syndrome ("SIBO")[8] and during the period of disability alleged in this case, the VA provided him with regular, ongoing treatment for this disorder. (AR 434-37, 466-469, 590.) Indeed, the Veterans Affairs' ("VA") list of "encounters"[9] suggest that Mr. Atencio was seen by VA gastroenterologists in April 2018, June 2018, September 2018, March 2019, and August 2019,[10] and the list of medications in the VA records suggest that he was prescribed antibiotics for SIBO that were dispensed in June 2018 and January, March, August, October, and December 2019.[11] The record also reflects that an abdominal ultrasound was ordered in March 2019 due to Mr. Atencio's "abdominal pain." (AR 495.)

Mr. Atencio also testified about his GI-related impairments and symptoms. Specifically, he testified that he was diagnosed with "IBS[12] and SIBO" in 2013, and stated,

> SIBO, you can't get rid of it. What that does, it's just like you go to the restroom about four or five times a day. And whatever medication, sometimes we change up

---

[8] "Small intestinal bacterial overgrowth (SIBO) occurs when there is an abnormal increase in the overall bacterial population in the small intestine." https://www.mayoclinic.org/diseases-conditions/small-intestinal-bacterial-overgrowth/symptoms-causes/syc-20370168 (last accessed Feb. 17, 2023). Signs and symptoms of SIBO often include loss of appetite, abdominal pain, nausea, bloating, an uncomfortable feeling of fullness after eating, diarrhea, unintentional weight loss, and malnutrition. *Id.*

[9] The Veterans Affairs records state that they include a "list of completed VA Outpatient Encounters for the patient and a list of Encounter Notes, Consult Notes, History & Physical Notes, and Discharge Summaries for the patient." (AR 434.)

[10] AR 435–37, 466-69 (showing office visits with gastroenterology doctors); *see* 551 (noting, "last [gastroenterology] clinic visit: August 2019"); 590 (reflecting that at least from June 2018 through January 5, 2021, among other conditions, SIBO was "an active health problem" Mr. Atencio's "VA providers are helping [him] to manage."))

[11] (AR 504, 506, 507, 569, 570, 572–574); *see* AR 640 (noting that Mr. Atencio took erythromycin intermittently from June 2018 to May 2020 with only partial "25%' improvement on latest trial; minocycline in June 2018 and September 2019 with "significant response in 2018" and "no response" with 2019 course; and Metronidazole in February 2020 with only partial improvement. As such, as of August 2020 he was found to meet "national VA criteria for use of rifaximin for treatment of SIBO based on failed trial of metronidazole and no response to minocycline retreatment.").)

[12] "Irritable bowel syndrome (IBS) is a common disorder that affects the . . . gastrointestinal tract. Symptoms include cramping, abdominal pain, bloating, gas, and diarrhea or constipation, or both. IBS is a chronic condition". https://www.mayoclinic.org/diseases-conditions/irritable-bowel-syndrome/symptoms-causes/syc-20360016 (last accessed Feb. 17, 2023).

>these crazy medications I've got to take for two weeks. And then, from then on you can't leave the house for — because you're in the restroom anywhere from about eight to 10 times a day. So, it depends on the different meds that they give me to try to — I'm like a guinea pig, you know, basically. They give me these meds to see if they're going to work or not. And then, I have to suffer through whatever they give me.

(AR 150.) He further testified that some of the medications prescribed to treat SIBO cause him to need the bathroom eight to 10 times per day during the two-week treatment periods. (AR 151.) Following this testimony, the ALJ commented at the hearing that Mr. Atencio's "IBS[13] [is] very important, [it's a] big deal." (AR 153.) Mr. Atencio's weight also fluctuates because of his GI issues and medication side-effects. (AR 159.)

Roberta Atencio, Mr. Atencio's wife[14], also provided corroborating evidence of Mr. Atencio's GI disorders and symptoms in a Third-Party Function Report (the "Report"). In the Report, Mrs. Atencio stated that because of "small intestine bacterial overgrowth[/]irritable bowel syndrome," Mr. Atencio "literally spends the majority of time on the toilet," Mr. Atencio "always needs to be near a toilet[]" and "he is literally on the toilet all the time and has to ensure he is near a toilet[]." (AR 358, 361, 363). The Report is dated December 25, 2019. (AR 355, 363.)  The record also reflects that the February 2020 initial Disability Determination Explanation ("DDE")

---

[13] Both Mr. Atencio and the ALJ appear to use "IBS" at times as a catch all reference to Mr. Atencio's GI symptoms. For instance, Mr. Atencio's hearing testimony used IBS and SIBO interchangeably and although he testified that the medications for *SIBO* sometimes cause him to have to go to the bathroom eight to 10 times a day, the ALJ referred to this testimony as related to his IBS diagnosis. (AR 18 ("IBS"), 19 ("SIBO"), 144, 150–51, 156, 159.) IBS and SIBO are distinct diagnoses, which "share many symptoms" and a person can be afflicted with both. https://my.clevelandclinic.org/health/diseases/21820-small-intestinal-bacterial-overgrowth-sibo (last accessed Feb. 17, 2023). "The main difference is that bacterial overgrowth can be clinically verified and treated. IBS, on the other hand, is a functional disorder that is diagnosed when [one's] symptoms can't be clinically explained." *Id.* The medical records do not reflect a definitive diagnosis of or IBS specific treatment during the relevant period. (*See* AR 600; *see also* AR 597, 653.) Nor do they rule out the previous IBS diagnosis Mr. Atencio testified about. (AR 150.) Later VA medical records further state a diagnosis of "SIBO, with possible component of IBS-D." (AR 600; *see also* AR 597, 653.)
[14] In his decision, the ALJ stated that Mr. Atencio's mother provided the Third-Party Function Report. (AR 21.) In fact, Mr. Atencio's wife completed the Report. (AR 355–63.)

and the April 2020 reconsideration DDE list "Other Disorders of [the] Gastrointestinal System" as a non-severe medically determinable impairment. (AR 206, 221.)

Despite this evidence, the ALJ failed to characterize Mr. Atencio's GI disorders as medically determinable impairments, severe or non-severe, at step two. (AR 13-14.) Indeed, he did not provide any discussion of Mr. Atencio's GI disorders at that stage of his analysis. (*Id.*) At step two, an ALJ must consider whether a DIB claimant has a severe physical or mental impairment (or combination of impairments) that meets the duration requirement. 20 CFR. § 404.1520(a)(4)(ii). The ALJ's failure at step two to consider Mr. Atencio's GI disorders and whether they significantly limited his physical ability to do basic work activities, was error. *Id*; 20 CFR §§ 404.1521, 404.1522. Though the ALJ proceeded through the sequential evaluation process, his decision failed to adequately consider Mr. Atencio's GI symptoms in conjunction with his RFC assessment. Ignoring the bulk of evidence of Mr. Atencio's lengthy history of GI symptoms, the ALJ's decision reflects the following minimal discussion at step four:

> Claimant . . . .testified that he has. . .IBS, but [this] impairment[ was] not significant during the adjudicative period. He stated that with his IBS, he would have to go the [sic] bathroom 8 to 10 times a day.

(AR 18.) Apart from an acknowledgment that "[a]t the reconsideration level, the Claimant's . . . gastrointestinal disorder . . . [was] not severe" (AR 19), there is no other mention of any of the significantly probative evidence related to Mr. Atencio's GI problems in the ALJ's opinion. The ALJ's inadequate evaluation of Mr. Atencio's GI disorders and symptoms warrants remand.

To begin, while it is technically correct that the medical records do not document a diagnosis of IBS during the adjudicative period, the ALJ's cursory statements reflected above both mischaracterize Mr. Atencio's testimony, and harmfully, fail to acknowledge Mr. Atencio's SIBO

syndrome and GI symptoms during the relevant period, including chronic diarrhea and abdominal discomfort. Contrary to the ALJ's statement, Mr. Atencio did not testify that IBS caused him to need the bathroom eight to ten times per day. Rather, he testified that his GI disorders cause him to "go to the restroom about four or five times a day" and that some of the medications prescribed to treat SIBO cause him to need the bathroom eight to 10 times per day during the two-week treatment period. (AR 150-151, 156, 159.) To the extent that the ALJ's articulation of "IBS" was meant to encompass all of Mr. Atencio's GI disorder-related diagnoses and symptoms, the ALJ's failure to so state, and to conduct more than the most perfunctory analysis, prevents the Court from following his reasoning.  The ALJ did not explain how he considered the evidence showing that Mr. Atencio's GI symptoms persisted during the relevant period, such as the medical records showing that Mr. Atencio 1) complained in April 2018 that he had had chronic diarrhea for more than two years (AR 437, 467–69), 2) was seen by gastroenterologists in June 2018, September 2018, March 2019, and August 2019,[15] and 3) was prescribed antibiotics for SIBO that were dispensed in June 2018 and January, March, August, October, and December 2019.[16] In addition, other than noting them, the ALJ did not explain how he considered prior administrative findings of a non-severe gastrointestinal disorder in determining the RFC. (AR 206, 221.)

Beyond his misleading and erroneous treatment of Mr. Atencio's GI-related issues, the ALJ made a conclusory proclamation that Mr. Atencio's assertions about the intensity, persistence,

---

[15] (AR 435–37 (showing office visits with gastroenterology doctors); see 551 (noting, "last [gastroenterology] clinic visit: August 2019"); 590 (noting that SIBO was diagnosed in June 2018).)

[16] (AR 504, 506, 507, 569, 570, 572–574); see AR 640 (noting that Mr. Atencio took erythromycin intermittently from June 2018 to May 2020 and minocycline in June 2018 and September 2019).) The record also shows that an abdominal ultrasound was ordered in March 2019 due to Mr. Atencio's "abdominal pain." (AR 495.)

and limiting effects of his symptoms[17] are inconsistent with the record. Because this statement seemingly refers to all of Mr. Atencio's testimony related to his various impairments, and because the ALJ does not indicate how he drew this conclusion, the Court is unable to meaningfully review it in the context of Mr. Atencio's testimony related to his GI symptoms. "In evaluating an individual's symptoms, it is not sufficient for [ALJs] to make a single, conclusory statement that . . . 'the statements about the individual's symptoms are (or are not) supported or consistent.'" Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Oct. 25, 2017)). Instead, "[t]he . . . decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id*. The ALJ failed to follow these principles here, and the record provides no clues as to the ALJ's reasoning. In fact, the Court's own review of the record demonstrates that Mr. Atencio's testimony related to his GI symptoms is consistent with the record. The Court is not confident that the ALJ properly considered any of the probative evidence related to Mr. Atencio's GI disorders and related symptoms.

Next, the Court considers the ALJ's treatment of Mrs. Atencio's Report wherein she states that, because of SIBO and/or IBS, Mr. Atencio "literally spends the majority of time on the toilet," Mr. Atencio "always needs to be near a toilet[]" and "he is literally on the toilet all the time and has to ensure he is near a toilet[]." (AR 358, 361, 363). Notably, the Report is dated December 25, 2019, i.e., before the date last insured, and thus supports Mr. Atencio's claims that his

---

[17] This general statement referred to Mr. Atencio's testimony concerning his depression, anger, alcohol consumption, difficulty sleeping, activities of daily living, asthma, and IBS. (AR. 18.)

symptoms were significant during the adjudicative period. (AR 355, 363.) However, in general terms, the ALJ discounted the Report because

> the statements made by [Mr. Atencio]'s [wife] were [not] given under oath. Further, she is not a medical professional and, as a lay witness, is not competent to make a diagnosis or argue the severity of the [Mr. Atencio]'s symptoms in relationship to h[is] ability to work. Moreover, as [Mr. Atencio's wife], her opinion is biased. More importantly, her statements are not supported by the clinical or diagnostic medical evidence, and inconsistent with the other substantial evidence of record.

(AR 21.) It is not readily apparent from this discussion or any other portion of the ALJ decision that the ALJ considered Mrs. Atencio's specific statements related to Mr. Atencio's GI symptoms.[18] In any event, as discussed below, the ALJ's reasons for discounting this Report are not supported by the evidence or are inadequate to permit meaningful review, or both.

First, the Social Security Administration provided a Third-Party Function Report form (Form SSA-3380-BK (7-2004)) to Mrs. Atencio. (AR 354.) That form does not require the statements therein to be made under oath. (AR 354–63); *see Kelli C. S. v. Berryhill*, No. 2:18-CV-02237-JDE, 2019 WL 1330890, at *5 (C.D. Cal. Mar. 25, 2019) (stating that "there is no requirement that a third-party function report be administered under oath").[19] Then, the ALJ's rejection of the Report on the ground that Mrs. Atencio is not a medical professional is contrary to the purpose of the Report, which "is to obtain the lay witness's subjective impression of claimant's

---

[18] Mrs. Atencio also discussed Mr. Atencio's symptoms from PTSD, sleep apnea, and other problems. The ALJ's blanket rejection of her statements, without explaining how her statements as to Mr. Atencio's different symptoms are contradicted by other evidence, also prevents the Court from following the ALJ's reasoning. (AR 355-63.)

[19] The current version of the Function Report – Adult – Third Party also does not require the form to be submitted under oath, but includes the following statement: "Anyone who makes or causes to be made a false statement or representation of material fact for use in determining a payment under the Social Security Act, or knowingly conceals or fails to disclose an event with an intent to affect an initial or continued right to payment, commits a crime punishable under Federal law by fine, imprisonment, or both, and may be subject to administrative sanctions." Form SSA-3380-BK (10-2020) available at https://www.ssa.gov/forms/ (last accessed Nov. 9, 2022).

abilities and limitations."[20] *Id.*; *see* 20 C.F.R. § 404.1513(a)(4) ("We may receive evidence from nonmedical sources either directly from the nonmedical source or indirectly, such as from forms we receive and our administrative records."); 20 C.F.R. § 416.913(a)(4) (same). Here, Mrs. Atencio does not make a diagnosis in the Report; instead, she described Mr. Atencio's symptoms and their impact on his activities. Such statements by a lay witness are competent evidence. *Kimes v. Comm'r*, 817 F. App'x 654, 659 (10th Cir. 2020) (stating that lay witness testimony is "significantly probative evidence."); *Kelly v. Berryhill*, 732 F. App'x 558, 565 (9th Cir. 2018) ("[L]ay witness testimony as to a claimant's symptoms or how an impairment affects ability to work *is* competent evidence[.]" (quoting *Tobeler v. Colvin*, 749 F.3d 830, 833–34 (9th Cir. 2014)); *see also Black v. Berryhill*, 2018 WL 1472525, at 21 (D. Utah Mar. 7, 2018) (stating, "[A]n ALJ must consider lay opinions in making a determination as to disability, and such opinions would generally not come from individuals 'who are medically trained.' Hence, questioning the accuracy of the information on that basis alone would run counter to the requirement to consider them.")

The suggestion that Mrs. Atencio's statements lack credibility because of her familial relationship to Mr. Atencio is both unsupported and insufficient to justify rejecting her Report. While the ALJ appropriately (though erroneously) considered the familial relationship between Mr. and Mrs. Atencio in determining how much weight to give the Report, potential bias arising from a familial relationship on its own, is not a proper basis to reject a witness's statements. *See Panas on behalf of M.E.M. v. Comm'r, SSA*, 775 F. App'x 430, 440 (10th Cir. 2019) ("[F]amily loyalty is generally not a valid reason to find a witness's statement not credible."). To do so is also inconsistent with the regulations requiring consideration of evidence from lay witnesses, who often

---

[20] Moreover, in making this finding, ALJ Leppala did not address the evidence that Mrs. Atencio is a registered nurse. (AR 186, 625, 684.)

are family members. The ALJ did not identify any evidence supporting a finding that Mrs. Atencio's familial relationship influenced her to give unreliable or false testimony. *Panas*, 775 F. App'x at 440 (stating that "the ALJ's assumption that [the claimant's] father was motivated by a financial interest, without more, is insufficient to discount his credibility").

The final reason the ALJ gave for discounting the Report is his sweeping statement that it is "not supported by the clinical or diagnostic medical evidence, and inconsistent with the other substantial evidence of record." (AR 21.) As it relates to Mrs. Atencio's statements concerning Mr. Atencio's GI disorders, this reasoning conflicts with the record evidence documenting his long-term GI symptoms spanning nearly a decade and the medical evidence showing that he was diagnosed with and actively treated for SIBO for about eighteen months during the period of alleged disability. Given this conflict, and without an explanation of how the ALJ assessed the evidence or what medical evidence he found to be inconsistent, the Court is unable to follow his reasoning or meaningfully review it. *Panas*, 775 F. App'x at 440 (stating that "the ALJ did not explain how the medical evidence conflicted with the father's observations, so a remand is required"); *Cordero v. Kijakazi*, No. 20-CV-01868-RAL, 2022 WL 1052681, at *28 (E.D. Pa. Apr. 4, 2022) (stating that "meaningful review" was impossible where the ALJ did "not point to any particular inconsistency" between the third-party report of symptoms and the record).

In sum, the ALJ erred by failing to adequately evaluate Mr. Atencio's GI disorders and symptoms in accordance with controlling legal standards. The ALJ's cursory and erroneous treatment of Mr. Atencio's GI disorders and symptoms is harmful and requires reversal.[21] Incorporation of limitations relating to Mr. Atencio's chronic diarrhea and frequent use of the

---

[21] The Commissioner states that "[t]he ALJ's decision is supported by substantial evidence and free of any harmful legal error[,]" but does not argue specifically that any error related to Mr. Atencio's gastrointestinal symptoms is harmless. (Doc. 23 at 10.)

restroom would likely result in a more restrictive RFC and potentially change the outcome. Indeed, when asked about the symptoms related to Mr. Atencio's SIBO medication side-effects, the Vocational Expert testified that "leaving the workstation eight to 10 times a day is outside of employer tolerances." (AR 166.) On remand, the ALJ should determine, following proper consideration of Mr. Atencio's GI disorders and symptoms, whether the RFC should include limitations related to his frequent use of the restroom, being off-task, and/or being absent from work.

## I.  CONCLUSION

Mr. Atencio's Opposed Motion to Reverse and/or Remand (Doc. 19) is GRANTED, and this matter is REMANDED to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.

IT IS SO ORDERED.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent